UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
BARDWIL INDUSTRIES INCORPORATED
and GEORGE C. BARDWIL,

               Plaintiffs,

      - against -

ALAN F. KENNEDY, RONALD J.
TASSELLO, and FREDERICK M.
ROGERS,

               Defendants.
--------------------------------X

**MEMORANDUM AND ORDER**

19 Civ. 8211 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Frederick M. Rogers moves to dismiss the claims against him in the amended complaint of Bardwil Industries Incorporated (the "Company") and George C. Bardwil ("Bardwil," and, together with the Company, "plaintiffs"). The Court grants Rogers' motion for the reasons stated herein.

## BACKGROUND

The Company, which is incorporated in New York, imports and wholesales textiles. Am. Compl. ¶¶ 10, 63. Bardwil is its sole shareholder and Chief Executive Officer. Am. Compl. ¶ 11. Alan F. Kennedy and Ronald F. Tassello (collectively with Rogers, "defendants") were its President and Chief Financial Officer, respectively, while Rogers was its Secretary and Executive Vice President of Global Procurement. Am. Compl. ¶¶ 12-14. The amended

complaint alleges that from 2002 to 2019, the Company's most valuable asset was a Table Linen and Bath License (the "License") with Lenox Textiles Corporation ("Lenox"), which plaintiffs allege accounted for approximately 35% of the Company's business. Am. Compl. ¶¶ 32.

The amended complaint alleges that in February 2019, at the direction of defendants, the Company moved approximately $6 million of assets from a warehouse that it had used for years in Columbus, Ohio to a warehouse in Dallas, Texas. Am. Compl. ¶¶ 15-16. Bill Crowley, a warehouse manager for the Company, went to Dallas to assist with the move. Am. Compl. ¶ 18. While he was there, he concluded that the Dallas warehouse was unfit for the Company's needs. Am. Compl. ¶ 19. Tony Roberts, who directed the Company's operations at the Columbus warehouse, found the same. Am. Compl. ¶ 21. Crowley and Roberts reported their findings to defendants and informed them that the landlord of the Columbus warehouse had offered to match the lower rent of the Dallas warehouse. Am. Compl. ¶¶ 20-21, 24. Plaintiffs allege that defendants ignored Crowley and Roberts. Am. Compl. ¶¶ 20-21.

The amended complaint alleges that during the second quarter of 2019, the Company failed to pay a $132,000 licensing fee owed to Lenox under the License. Am. Compl. ¶ 31. Several months

later, in August 2019, Bardwil received an email from Home Textiles Today, a textiles industry newsletter, that read, "'Breaking News: Lenox brand lands in new home.  After 17 years with its former home textiles partner, Lenox has struck a new licensing deal.'" Am. Compl. ¶ 33.  The email noted that "Lenox had agreed to give Arlee Home Fashions ('Arlee') the License, and that 'Lenox's former licensee for table lines [sic], kitchen textiles and bath coordinates since 2002 was Bardwil Linens, which ha[d] been winding down its business.'"  Am. Compl. ¶ 34.  The amended complaint alleges on information and belief that "Defendants orchestrated and participated in moving the License to Arlee for their personal benefit," Am. Compl. ¶ 37, and that they did so "without [Bardwil's] knowledge and approval," Am. Compl. ¶ 38.

The amended complaint alleges that "[a]fter reading the article on August 21, 2019 about his company being wound down," Bardwil went to the Company's offices in Manhattan, where he allegedly learned that defendants had laid off the Company's design staff.  Am. Compl. ¶ 64.  Several weeks later, Bardwil returned to the Company's offices and found that the computers, furniture, and artwork were absent.  Am. Compl. ¶ 65.  Plaintiffs allege on information and belief that "the property was stolen by the Defendants."  Am. Compl. ¶ 66.  Plaintiffs also allege on

-3-

information and belief that by the end of September 2019, defendants had "systematically liquidated" the Company, including its inventory in the Dallas warehouse, "for their personal benefit." Am. Compl. ¶¶ 27-28, 61.

The amended complaint also alleges that defendants took steps to conceal their alleged self-dealing from plaintiffs. Specifically, it asserts that defendants provided plaintiffs only unaudited financial information about the Company. Am. Compl. ¶ 48. Moreover, it alleges that defendants failed to supply certain of the Company's bank statements to its accountants, Hertz Herson. See Am. Compl. ¶¶ 50-52. After Bardwil learned of this, he obtained the bank statements, which allegedly failed to match the information that defendants had supplied to Hertz Herson as part of its reviews of the Company. See Am. Compl. ¶¶ 53-58.

On September 4, 2019, plaintiffs filed a complaint against defendants, asserting claims for breach of fiduciary duty, conversion, and an injunction. See ECF No. 1 (Compl.) at 6-8. Whereas Kennedy and Tassello filed a joint answer to the complaint, see ECF No. 19, Rogers filed a pre-motion letter regarding a contemplated motion to dismiss, see ECF No. 27. After the Court held a pre-motion conference regarding Rogers' contemplated motion, plaintiffs amended their complaint presumably in an effort

-4-

to cure the deficiencies that Rogers had identified.  During the pre-motion conference, the parties informed the Court that the Company no longer employs defendants.  Rogers now moves to dismiss the amended complaint.

## DISCUSSION

Rogers moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Such pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

### 1. Breach of Fiduciary Duty

Rogers advances two arguments for why the amended complaint fails to state a claim against him for breach of fiduciary duty.

-5-

First, he contends that it fails to allege that he owed fiduciary duties to the Company.  This argument fails.  Rogers was the Company's Secretary and Executive Vice President of Global Procurement.  Under New York law, which governs plaintiffs' claim for breach of fiduciary duty,[1] the secretary and vice presidents of a corporation are officers of it.  See N.Y. Bus. Corp. Law § 715(a) ("The board may elect or appoint . . . one or more vice-presidents, a secretary . . . and such other officers as it may determine.").  Moreover, "[a]n officer shall perform his duties as an officer in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances."  Id. § 715(h).  Rogers thus owed fiduciary duties to the Company.

Second, Rogers argues that the allegations in the amended complaint, all of which are asserted against "[d]efendants," improperly lump defendants together.  While the parties debate whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) governs plaintiffs' claim for breach of fiduciary

---

[1] "When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules."  In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  "New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims."  Marino v. Grupo Mundial Tenedora, S.A., 810 F.Supp. 2d 601, 607 (S.D.N.Y. 2011).  New York law accordingly governs plaintiffs' claim for breach of fiduciary duty because the Company is incorporated in New York.

duty, see Frota v. Prudential-Bache Sec., Inc., 639 F.Supp. 1186, 1193 (S.D.N.Y. 1986) ("Rule 9(b) extends to all averments of fraud or mistake whatever may be the theory of legal duty -- statutory, common law, tort, contractual, or fiduciary."), the Court need not address whether and to what extent Rule 9(b) applies because the amended complaint's claim for breach of fiduciary duty fails to comport with even the less stringent pleading standard of Federal Rule of Civil Procedure 8.

"'Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'" In re Platinum-Beechwood Litig., 427 F.Supp. 3d 395, 438 (S.D.N.Y. 2019) (quoting Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001) (summary order)). Accordingly, "[w]here a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (citing Atuahene, 10 Fed. App'x at 34), aff'd, 530 Fed. App'x 19 (2d Cir. 2013). Plaintiffs "cannot merely 'lump all the defendants together in each claim and provide

no factual basis to distinguish their conduct.'" <u>Id.</u> (quoting
<u>Atuahene</u>, 10 Fed. App'x at 34); <u>see also</u> <u>Nesbeth v. N.Y.C. Mgmt.</u>
<u>LLC</u>, 17 Civ. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019)
("[I]t is well-established in this Circuit that plaintiffs cannot
simply lump defendants together for pleading purposes" under Rule
8 (quotation marks omitted)).

   With the exception of one allegation, which is asserted
specifically against Tassello, <u>see</u> Am. Compl. ¶ 45, not a single
allegation specifies which defendant engaged in what misconduct.
Instead, each allegation ambiguously asserts that "[d]efendants"
carried out the alleged wrongdoing.  For example, the amended
complaint alleges that "[d]efendants ordered all of the[] assets
to be moved from the Columbus warehouse," Am. Compl. ¶ 16, that
"[d]efendants liquidated the inventory" in the Dallas warehouse,
Am. Compl. ¶ 28, that "[d]efendants failed to pay the licensing
fees due to Lenox," Am. Compl. ¶ 31, that "[d]efendants
orchestrated and participated in moving the License to Arlee," Am.
Compl. ¶ 37, that "[d]efendants" "fail[ed] . . . to engage an
independent auditor," Am. Compl. ¶ 49, and that "[d]efendants" did
not provide bank statements to Hertz Herson, Am. Compl. ¶ 59.

   Such undifferentiated allegations, which lump defendants
together without providing any factual basis for distinguishing

among them, fail to inform Rogers of the grounds on which the
breach of fiduciary duty claim against him rests. See Ochre LLC,
2012 WL 6082387, at *6 ("[F]ailure to isolate the key allegations
against each defendant supports dismissal under the standards set
forth in Twombly and Iqbal."). Moreover, they fail to allay doubts
that Rogers, as Secretary and Executive Vice President of Global
Procurement of the Company, would have even had a role in
liquidating inventory, ensuring payment of the Company's licensing
fees, and overseeing the Company's finances.

The allegations in support of the amended complaint's claim
for breach of fiduciary duty against Rogers are accordingly
deficient under Rule 8.

### 2. Conversion

The Court also dismisses the amended complaint's claim
against Rogers for conversion. Just as the amended complaint's
undifferentiated allegations against "[d]efendants" are fatal to
plaintiffs' claim for breach of fiduciary duty, so, too, are they
lethal to plaintiffs' claim for conversion. Moreover, the amended
complaint fails to specify "the ground[s] upon which" the claim
for conversion "rests," In re Platinum-Beechwood Litig., 2019 WL
4934967, at *20 (quotation marks omitted), as the sole allegations
in support of that claim are that "[p]laintiffs' assets were

wrongfully acquired by competitors" and "[d]efendants . . . directly misappropriated assets of the [p]laintiffs," Am. Compl. ¶¶ 78-79; see also Pls.' Opp. (ECF No. 39) at ¶¶ 23-24 (citing the quoted allegations for the proposition that plaintiffs have stated a claim for conversion).  Rogers is thus left to guess not only which factual contentions are asserted against him, but also which of those contentions are the basis for plaintiff's claim for conversion.  Such guesswork is antithetical to the "'fair notice'" that Rule 8 requires.  See In re Platinum-Beechwood Litig., 2019 WL 4934967, at *20 (quoting Atuahene, 10 Fed. App'x at 34).

Even if the amended complaint were not deficient under Rule 8, it would still fail to state a claim for conversion.  Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 860 N.E.2d 713, 717 (N.Y. 2006).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Id. (citations omitted).  Plainly, Lenox's decision to execute a license with Arlee in the aftermath of the Company's failure to pay Lenox the

$132,000 fee due under the License did not constitute a conversion of the License by defendants.  Moreover, while the amended complaint alleges that defendants liquidated the Company "for their personal benefit," Am. Compl. ¶ 27, and that they "stole[]" the computers, furniture, and artwork from the Company's offices, Am. Compl. ¶ 65, such contentions are little more than "'naked assertions' devoid of 'further factual enhancement'" insufficient to allege that defendants asserted dominion over those assets. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Similarly, while plaintiffs protest that defendants wound down the Company without Bardwil's knowledge or approval, the amended complaint nowhere alleges that defendants required shareholder approval, or otherwise lacked the authority as officers of the Company, to do so.  The amended complaint therefore also fails plausibly to allege that defendants were without authority to liquidate the Company's inventory and other assets.

### 3. Claim for an Injunction

Finally, the Court dismisses plaintiffs' claim for an injunction prohibiting Rogers from "transfer[ring]" certain of the Company's licenses, including with Lenox, and "from engaging in further breaches of fiduciary duty and diverting assets from [plaintiffs]." See Am. Compl. ¶¶ 84-85.  As the amended complaint

fails to state a claim against Rogers, and as the Company no longer employs him, no injunction is warranted.

## CONCLUSION

Rogers' motion to dismiss is granted, and the Court dismisses the claims against him with prejudice.[2]   The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 37 and 40.

**SO ORDERED.**

Dated:    New York, New York
          May 27, 2020

                                        _____
                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

[2] "Although federal courts are inclined to grant leave to amend following a dismissal order," a district court does not abuse its discretion if it dismisses a claim with prejudice where, as here, "leave to amend has not been sought." Chen v. Antel Commc'ns, LLC, 653 Fed. Appx 43, 44 (2d Cir. 2016) (summary order). Moreover, plaintiffs have already replead their claims against Rogers. Indeed, on November 18, 2019, after the parties had exchanged pre-motion letters, the Court held a pre-motion conference concerning Rogers' contemplated motion to dismiss. The Court afforded plaintiffs the opportunity to amend their complaint in order to address the pleading deficiencies that Rogers had identified and on which this Memorandum and Order is based. Notwithstanding the benefit of Rogers' pre-motion letter and an extensive colloquy with the Court at the pre-motion conference, plaintiffs' amended complaint still fails to state a claim against Rogers. "While pleading is not a game of skill in which one misstep may be decisive as to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., Nos. 07 Civ. 8686, 07 Civ. 8688 (GEL), 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (quotation marks and citations omitted); see also NRW, Inc. v. Bindra, No. 12 Civ. 8555 (RJS), 2015 WL 3763852, at *1 (S.D.N.Y. June 16, 2015) ("To grant leave to amend after a plaintiff has had ample opportunity to amend would be condoning a strategy whereby plaintiffs hedge their bets . . . in the hopes of having another bite at the proverbial apple." (quotation marks and citations omitted)). The claims against Rogers are thus dismissed with prejudice.